The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: September 30 2021

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 20-30223 |
| | ) | |
| Roderick C. Latson, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 20-03049 |
| | ) | |
| Roderick C. Latson, | ) | Judge John P. Gustafson |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| U.S. Dep't of Education, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OF DECISION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Roderick C. Latson ("Latson"), commenced this adversary proceeding by filing a Complaint seeking to discharge educational debts. Defendant, United States, on behalf of the Department of Education ("Department"), filed a motion for summary judgment. Latson did not respond to Department's motion.

This proceeding is now before the court for decision on the Department's motion for summary judgment filed on April 9, 2021. The Department moves for summary judgment in its favor because Latson fails to allege that there are any disputed issues of material fact under §523(a)(8)(A)(i) and the Department is entitled to judgment as a matter of law.

## JURISDICTION AND VENUE

The district court has jurisdiction over this adversary proceeding under 28 U.S.C. §1334(b) as a civil proceeding arising in or related to a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. §157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine the dischargeability of debts are core proceedings that the court may hear and decide. 28 U.S.C. §157(b)(1) and (b)(2)(I). Venue is proper under 28 U.S.C. §1409(a).

This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Plaintiff's student loans are nondischargeable under §523(a)(8)(A)(i).

## BACKGROUND

On January 28, 2020, Latson filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On April 22, 2020, the Chapter 7 Trustee filed a "no-asset" report stating that "there is no property available for distribution from the estate over and above that exempted by law." [Bankr. No. 20-30223, Doc. entry dated Apr. 22, 2020].[1] On June 11, 2020, this court entered its Order of Discharge, [Bankr. No. 20-30223, Doc. #15], and on June 16, 2020, Latson's bankruptcy case was administratively closed. [Bankr. No. 20-30223, Doc. #17].

Subsequently, on July 23, 2020, Latson moved to reopen his bankruptcy case, [Bankr. No. 20-30223, Doc. #19], in order to file a complaint to determine the dischargeability of certain educational debts. On August 20, 2020, this court granted Debtor's motion and reopened his case. [Bankr. No. 20-30223, Doc. #25].

---

1/ Citations to the electronic docket will identify which case number's docket the document is contained within and the ECF number for the docket entry. For example, references to the docket in the adversary proceeding appear as [Adv. No. 20-03049, Doc. #___]. References to the docket in the Debtor's chapter 7 bankruptcy, appear as [Bankr. No. 20-30223, Doc. #___].

On August 24, 2020, Latson initiated this adversary proceeding against the following five parties: U.S. Department of Education, Debt Management & Collection System, Ascendium Education Solutions, Inc., Navient Solutions, Inc., and Deutsche Bank ELT SLM Trust 200. All defendants were served on August 24, 2020.

On September 14, 2020, Latson and Navient Solutions, LLC filed a joint stipulation dismissing "Navient Solutions, LLC," and "Deutsche Bank ELT, Navient and SLM Trust" as defendants in this adversary proceeding. [Adv. No. 20-03049, Doc. #4]. Navient represented "that Deutsche Bank ELT, Navient and SLM Trust[s] is not an actual entity in existence, but rather, a generic term Navient uses to describe the holder of FFELP loans that it services, that are held in various securitized trusts, for which Deutsche Bank Trust Company Americas is the trustee." [*Id.* ¶13].

On September 30, 2020, the Department filed its Answer. [Adv. No. 20-03049, Doc. #7]. On October 16, 2020, after holding a pre-trial conference the court entered an Adversary Proceeding Scheduling Order, designating January 15, 2021 as the deadline for completion of discovery and January 19, 2021 as the date for further pre-trial hearing.

On November 5, 2020, the parties stipulated to dismissal of "Count Two: Determination of Dischargeability – 'Undue Hardship'" of the Complaint. [Adv. No. 20-03049, Doc. #11]. A second Adversary Proceeding Scheduling Order was entered, designating February 23, 2021 as the date for further pre-trial hearing. A third Adversary Proceeding Scheduling Order was entered setting an April 9, 2021 deadline for filing Motions for Summary Judgment, and also designating May 12, 2021 as the deadline to file a Response.

On April 9, 2021, Department moved for summary judgment. The Department's motion attached a Declaration of Rhonda Terry as Exhibit A, and a record of the Database of Accredited Postsecondary Institutions and Programs as Exhibit B. The Declaration of Rhonda Terry attaches as exhibits a certificate of indebtedness, master promissory notes, and a history of student loan disbursements.

I. **Findings of Fact.**

Latson attended several institutions of higher education between 1999 and 2017.[2] Beginning in 2004, Latson attended Owens Community College. He then attended ITT Technical

---

2/ On March 9, 1995, Latson received two disbursements to attended Davis College. These loan amounts are not at issue here. [Adv. No. 20-03049, Doc. #20-1, p. 31].

Institute between 2008 and 2010. Between 2010 and 2012 Latson attended Tiffin University. In 2013, Latson attended Winebrenner Theological Seminary. The last institution Latson attended was Ohio Christian University between 2014 and 2017.

He financed his studies with student loans under the William D. Ford Federal Direct Loan Program ("Direct Loan Program"), the Federal Family Education Loan Program ("FFELP"), and other grants and scholarships. Between 2004 and 2010, Latson financed his studies at Owens Community College and ITT Technical Institute with FFELP loans. Between 2010 and 2017, Latson financed his studies while attending Tiffin University, Winebrenner Theological Seminary, and Ohio Christian University with student loans obtained under the Direct Loan Program.

The Department holds three Master Promissory Notes. On August 14, 2008, Latson executed a FFELP promissory note. Latson also executed a Direct Loan Program promissory note on October 19, 2010. On May 18, 2013, Latson executed a second Direct Loan Program promissory note. The following disbursements[3] were made under these notes:

|         | Loan Program | Disbursement Date  | Disbursed Amount |
|---------|--------------|--------------------|------------------|
| Loan 1  | Direct Loan  | January 4, 2017    | $8,875.00        |
| Loan 3  | Direct Loan  | May 6, 2015        | $8,875.00        |
| Loan 4  | Direct Loan  | November 13, 2014  | $9,645.00        |
| Loan 5  | Direct Loan  | May 20, 2014       | $8,290.00        |
| Loan 6  | Direct Loan  | June 12, 2013      | $3,517.00        |
| Loan 7  | Direct Loan  | September 24, 2012 | $2,253.00        |
| Loan 8  | Direct Loan  | February 13, 2012  | $3,929.00        |
| Loan 9  | Direct Loan  | February 13, 2012  | $8,558.00        |
| Loan 10 | Direct Loan  | November 18, 2010  | $5,500.00        |
| Loan 11 | Direct Loan  | November 18, 2010  | $7,000.00        |
| Loan 12 | FFELP Loan   | December 1, 2009   | $3,055.00        |
| Loan 13 | FFELP Loan   | December 1, 2009   | $3,888.00        |
| Loan 14 | FFELP Loan   | June 2, 2009       | $1,000.00        |
| Loan 15 | FFELP Loan   | April 15, 2009     | $3,500.00        |

---

3/ Latson's loan history lists a disbursement in the amount of $0.00 on December 12, 2015. The court does not analyze this disbursement, which is listed as the second disbursement (i.e., "Loan 2") in the National Student Loan Data System's Loan History for Latson. [Adv. No. 20-03049, Doc. #20-1, p. 27, Ex. A-5].

4

| Loan 16 | FFELP Loan | April 15, 2009 | $6,000.00 |
|---|---|---|---|
| Loan 17 | FFELP Loan | August 20, 2008 | $3,500.00 |
| Loan 18 | FFELP Loan | August 20, 2008 | $6,000.00 |

Ascendium Education Solutions, Inc. ("Ascendium") appears to have guaranteed a certain amount of the loans made under the FFELP. The disbursements Ascendium guaranteed precede the execution of the promissory notes listed above. For this reason, the loans Ascendium guaranteed do not appear to have been made under the three Master Promissory Notes attached to the Department's motion. The following disbursements were made under this earlier note:

|  | Loan Program | Disbursement Date | Disbursed Amount |
|---|---|---|---|
| Loan 19 | FFELP Loan | January 28, 2004 | $1,331.00 |
| Loan 20 | FFELP Loan | January 28, 2004 | $2,625.00 |

Latson's Complaint does not seek to discharge all of his loans. Rather Debtor seeks to discharge certain amounts of the obligations incurred between 1999 and 2017, totaling $122,151.00. [Adv. No. 20-03049, Doc. #1, ¶10]. Latson's Complaint asserts two grounds for relief under 11 U.S.C. §523(a)(8)(B). In essence, Debtor first alleges that a portion of these loans are dischargeable because they were in excess of the "Cost of Attendance," and, second, he alleges these loans were incurred to attend a non-eligible institution, namely ITT Technical Institute. [Adv. No. 20-03049, Doc. #1, ¶¶15-17, 22-25]. These portions, he alleges, do not constitute "Qualified Education Loans" and are thus dischargeable. [*Id.*]

The Department's motion requests summary judgment on Loans 1 through 18 because they are nondischargeable under §523(a)(8)(A)(i). These allegedly nondischargeable debts consist of a unpaid principal totaling $118,348.16. [Adv. No. 20-03049, Doc. #20-1, p. 5, Ex. A-1]. The Department's motion does not expressly refer to Loans 19 and 20, which appear to have been made under the FFELP.

**SUMMARY JUDGMENT STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all

5

inferences must be viewed in the light most favorable to the non-moving party. *See, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986).

The party moving for summary judgment always bears the initial burden of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). When the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2507, 91 L.Ed.2d 202 (1986).

"A party is entitled to summary judgment if it shows that 'there is no genuine dispute as to any material fact' and that it 'is entitled to judgment as a matter of law.'" *Wilson v. Gregory*, 3 F.4th 844, 855 (6th Cir. 2021). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

"When faced with an unopposed motion for summary judgement, a trial court must conduct its own independent threshold inquiry into the sufficiency of the motion's legal and factual basis." *Murrell v. Edsouth* (*In re Murrell*), 605 B.R. 464, 469 (Bankr. N.D. Ohio 2019). "In other words, 'the court must indeed intelligently and carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party.'" *Id.* (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992)). "The court, for example, must not overlook the possibility of evidentiary misstatements presented by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992).

## LAW AND ANALYSIS

Subsection 523(a)(8)(A)(i) applies to loans "in which a governmental unit or a nonprofit institution had a defined role." *Crocker v. Navient Sols., L.L.C.* (*In re Crocker*), 941 F.3d 206, 217 (5th Cir. 2019). Congress added §523(a)(8)(B) to the Bankruptcy Code through the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23, enacted April

6

20, 2005, and effective October 17, 2005. This Amendment expanded the existing discharge exception to private student loans that were not government- and non-profit-backed educational loans. *See, Conti v. Arrowood Indem. Co.* (*In re Conti*), 982 F.3d 445, 448 (6th Cir. 2020), *cert. denied*, ___ S.Ct. ___, 2021 WL 2637894, 2021 U.S. LEXIS 3502 (2021).

In this proceeding, Latson's Complaint focuses exclusively on §523(a)(8)(B), alleging the educational loans are not "qualified education loans." On the other hand, the Department's motion asserts §523(a)(8)(A)(i) is the subsection that properly applies to Latson's educational loans.

A debt is nondischargeable if it falls within any of the subsections in §523(a)(8). 4 Collier on Bankruptcy ¶523.14[2] at 523-105 (16th Ed. 2021). If the Department is correct in asserting that the debts are nondischargeable under §523(a)(8)(A)(i), there is no need to consider §523(a)(8)(B). *Monyak v. Navient Sols., LLC* (*In re Monyak*), 2021 WL 371753 at *3, 2021 Bankr. LEXIS 239 at *6 (Bankr. N.D. Ohio Feb. 2, 2021)("Because an education-related debt need only fit within one of the three subdivisions to fall within the discharge exception of §523(a)(8), if the court finds that the loans in question fall within one of the subdivisions, it need not address whether the loans fall within the other subdivisions."). For the reasons below, this court finds that the obligations represented in Loans 1 through 18 are nondischargeable under §523(a)(8)(A)(i).

I. **11 U.S.C. §523(a)(8)(A)(i).**

The inquiry here focuses on the statutory text. The Bankruptcy Code excepts from discharge, absent a showing of undue hardship, certain educational debt. *See,* §523(a)(8). The federal bankruptcy system is designed to "aid the unfortunate debtor by giving him a fresh start in life." *Lamar, Archer & Cofrin, LLP v. Appling*, ___ U.S. ___, 138 S.Ct. 1752, 1758, 201 L.Ed.2d 102 (2018). Accordingly, courts must limit the Bankruptcy Code's discharge exceptions to those "plainly expressed." *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 275-76, 133 S.Ct. 1754, 185 L.Ed.2d 922 (2013).

In "any §523(a) analysis, the creditor bears the burden of proving by a preponderance of the evidence that a debt is excepted from discharge." *Conti v. Arrowood Indem. Co.* (*In re Conti*), 982 F.3d 445, 448 (6th Cir. 2020). Thus, the Department bears the burden of proving the debts are excepted from discharge under §523(a)(8)(A)(i).

To determine the "plain meaning" of the statute, the court must look to the particular statutory language at issue and the specific context in which that language is used. *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, ___ U.S. ___, 138 S.Ct. 883, 893, 200 L.Ed.2d 183 (2018); *K*

20-03049-jpg    Doc 21    FILED 09/30/21    ENTERED 09/30/21 15:01:03    Page 7 of 16

*Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988); *Andrews Univ. v. Merchant* (*In re Merchant*), 958 F.2d 738, 739 (6th Cir. 1992).

Subdivision §523(a)(8)(A)(i) contains two distinct provisions. It excepts from discharge any debt for "an educational benefit overpayment or loan" that is "made, insured, or guaranteed by a governmental unit," or any debt for "an educational benefit overpayment or loan" that is "made under any program funded in whole or in part by a governmental unit or nonprofit institution." To be within either category of this clause, "a debt must be either 'an educational benefit overpayment or loan.'" *Palmer v. Galaxy Int'l Purchasing, LLC* (*In re Palmer*), 2021 WL 1259258 at *7, 2021 Bankr. LEXIS 834 at *21 (Bankr. N.D. Ohio Mar. 31, 2021). "Such educational benefit overpayment or loan must then be shown to be either 'made, insured, or guaranteed by a governmental unit,' or 'made under any program funded in whole or in part by a governmental unit or nonprofit institution.'" *Id.* The statute is written in the disjunctive; an educational loan is nondischargeable if it falls within either the "made, insured, or guaranteed by a governmental unit" category, or the "made under any program funded in whole or in part by a governmental unit or nonprofit institution" category. *See,* 4 Collier on Bankruptcy ¶523.14[2] at 523-105 (16th Ed. 2021).

Accordingly, the Department bears the burden of establishing "(1) an overpayment or a loan, (2) that is educational, and (3) either (a) made, insured, or guaranteed by a governmental unit, or (b) made under a program wholly or partially funded by a governmental unit or nonprofit." *Moon v. Iowa Student Loan Liquidity Corp.* (*In re Moon*), 610 B.R. 616, 621 (Bankr. E.D. Wis. 2019). The existence of a "benefit overpayment or loan" is undisputed,[4] thus this court only analyzes whether the loans were "educational" under the statute, and have the requisite governmental or nonprofit nexus.

### A. "Educational."

Latson's Complaint alleges two reasons why the loans were not "educational" loans and therefore fail to meet the criteria for "qualified education loans." First, Debtor argues that the loans were not "qualified education loans" because a certain amount was in excess of, and not limited to, the cost of attendance. [Adv. No. 20-03049, Doc. #1, ¶¶15-17]. Second, the loans were

---

4/ On September 30, 2020, the Department filed its Answer, in which it admits that Latson is indebted to the Department for 17 federal student loans the Department originated from August 14, 2008 to January 4, 2017. *See generally,* [Adv. No. 20-03049, Doc. #7, ¶12]. There is no genuine issue of material fact that the debts are "loans."

8

not "qualified education loans" because some of them were used to attend an allegedly unaccredited for-profit institution. [*Id.* ¶¶22-25].

Courts have held that the purpose, and not the actual use of the funds, determines whether the loan is "educational" under §523(a)(8)(A). *See e.g.*, *Conti v. Arrowood Indem. Co.* (*In re Conti*), 982 F.3d 445, 448 (6th Cir. 2020). The Sixth Circuit has held that in order to determine whether loans are "educational," the proper analysis is to examine the "initial purpose" of the loans, "rather than their actual uses." *Id.* at 449[5] (citing *Busson-Sokolik v. Milwaukee Sch. of Eng'g* (*In re Sokolik*), 635 F.3d 261, 266 (7th Cir. 2011); *Murphy v. Pa. Higher Educ. Assistance Agency* (*In re Murphy*), 282 F.3d 868, 873 (5th Cir. 2002); *Andrews Univ. v. Merchant* (*In re Merchant*), 958 F.2d 738, 742 (6th Cir. 1992)).

In order to determine the "initial purpose" of the loan, a bankruptcy court "need only ask whether the lender's agreement with the borrower was predicated on the borrower being a student who needed financial support to get through school." *Cf. In re Conti*, 982 F.3d at 449. In *Conti*, the Sixth Circuit concluded that the loans in issue were "educational." *See, id.* In doing so, the Sixth Circuit noted, among other things, that the "applications and promissory notes expressly: tie the loans to Conti's student status at Michigan for a given enrollment period; limit the loan amount to the 'full cost of education less any financial aid you are receiving'; limit use of the loan to 'specific educational expenses.'" *Id.* Additionally, beyond the loan documents, the court in *Conti* noted that the loans appeared to have been disbursed to the institution directly. Based on these facts, the Sixth Circuit determined that the purpose of the loans were "educational." *See, id.* Accordingly, this court first reviews the loan applications and promissory notes to determine whether the loans were "educational" under the *Conti* standard.

Here, Loans 1 through 11 were made through the Direct Loan Program. Loans 12 through 18 were made through the FFELP. The promissory notes Latson executed show he expressly acknowledged that the loans were for "educational" purposes. *See, Murphy v. Pa. Higher Educ. Assistance Agency* (*In re Murphy*), 282 F.3d 868, 873 (5th Cir. 2002). For example, the Master Promissory Notes for the Direct Loans and FFELP Loans certify and represent that Latson

---

5/ Although *Conti* is limited to §523(a)(8)(B), *Conti* supported its holding "first and foremost, [on] the statutory definition of qualified education loan," and second, based on the "concerns that have long motivated other circuits to adopt a purpose test for 'educational loans' under §523(a)(8)(A)." *Id.* Thus, *Conti* provides strong support for the conclusion that the purpose test is appropriate for "educational" loans under §523(a)(8)(A). This decision follows and applies *Conti* to §523(a)(8)(A).

9

promised to repay any loan monies that cannot be attributed to "education expenses"; and that Latson "may request additional loan funds for educational costs." *Cf. In re Conti*, 982 F.3d at 449. Furthermore, both of the Master Promissory Notes for the Direct Loans include a "Borrower's Rights and Responsibilities Statement," which place a condition on the loan monies: "You may use the loan money you receive only to pay authorized educational expenses." *Cf. id.*

To the extent that this court needs to look beyond those documents to determine the loan's purpose, the loan proceeds were first disbursed directly to the educational institutions. *In re Conti*, 982 F.3d at 449; [Adv. No. 20-03049, Doc. #20-1, pp. 6, 15]("I authorize my school to credit my loan proceeds to my student account at the school."); [*Id.*, pp. 10, 19]("Disbursement (how your loan money will be paid out)."); [*Id.*, p. 23]("I authorize my school to transfer loan proceeds received by electronic funds transfer (ETF) or master check to my student account."). Latson's Complaint alleges the loans were not "educational" because some of the loans were used to attend an unaccredited[6] for-profit institution. Nothing in the statute requires the educational institution to be a non-profit. Whether the loans were used to pay tuition at a non-profit, or for-profit, institution does not change the purpose of the loans being "educational." *See, Rumer v. Am. Educ. Servs.* (*In re Rumer*), 469 B.R. 553, 562 (Bankr. M.D. Pa. 2012); *Hayes v. Educ. Credit Mgmt. Corp.* (*In re Hayes*), 2006 WL 4481999 at *4, 2006 Bankr. LEXIS 4201 at *14 (Bankr. D. Md. Oct. 11, 2006)(FFELP loans used to pay tuition at Allstate Career School, a for-profit institution, were educational loans under §523(a)(8)). Under the purpose driven test, and with no contrary evidence in the record, these facts are sufficient to establish that the loans were "educational."

Further, an examination of the unique features of the FFELP and Direct Loan Program provides an additional basis for finding that the loans were "educational." *See, In re Murphy*, 282 F.3d at 872. The features of these programs undermine Latson's arguments for dischargeability. For example, the statutes authorizing these programs calculate and define the "cost of attendance" by including allowances for "room and board," "miscellaneous personal expenses," and childcare. *See, id* at 869 (portion of FFELP loans used by debtor to purchase a car and to pay for housing, food, and fraternity dues was excepted from discharge). Latson's Complaint alleges that the loans

---

6/ Latson alleged he received student loans to attend an ineligible institution, ITT Technical Institute. The Department attached as Exhibit B a copy of the Database of Accredited Postsecondary Institutions and Programs maintained by the Department, which lists ITT Technical Institute as an accredited institution during Latson's attendance. [Adv. No. 20-03049, Doc. #20, pp. 9-10]. Debtor has provided no evidence to the contrary. ITT Technical Institute withdrew from accreditation in 2016. [*Id.*]

were not "educational" because a certain amount exceeded the cost of attendance. However, loans in excess of the cost of attendance, which are used for personal expenses incidental to school-attendance, facilitate an education and have been held to be "educational." *Id.* at 870 ("Section 523(a)(8) does not expressly state that only loans 'used for tuition' are nondischargeable. Nor does it define educational loans as excluding living or social expenses."). Moreover, allowing "debtors to discharge their student loans simply because they misuse the funds for non-educational expenses would not further Congress' goal of preserving the financial integrity of the student loan system." *In re Conti*, 982 F.3d at 449.

Lastly, when loans have been made under a federal program, 20 U.S.C. §1070 *et seq.*, courts have held that the loans are "educational." *Tift Cnty. Hosp. Auth. v. Nies* (*In re Nies*), 334 B.R. 495, 504 (Bankr. D. Mass. 2005)(comparing *Resurrection Med. Ctr. v. Lakemaker* (*In re Lakemaker*), 241 B.R. 577, 580 (Bankr. N.D. Ill. 1999)(noting in *dicta* that the loan was not guaranteed by the federal government and that its terms were not consistent with the FFELP) with *Shaffer v. United Student Aid Funds, Inc.* (*In re Shaffer*), 237 B.R. 617, 619-21 (Bankr. N.D. Tex. 1999)(consolidation loan was a valid education loan because it was made under the FFELP)); *see also, Lewis v. Pa. Higher Educ. Assistance Agency*, 2018 WL 11235927 at *3, 2018 U.S. App. LEXIS 1873 at *8 (6th Cir. Jan. 24, 2018)(noting that the FFELP is a student loan program governed by the Higher Education Act and the loans originated under this federal student loan program were guaranteed by a governmental unit).

Thus, the fact that Latson's loans were made under two federal programs, the FFELP and the Direct Loan Program, provides an additional reason why there is no genuine issue of material fact that Loans 1 through 18 were "educational." *See, In re Conti*, 982 F.3d at 449; *In re Merchant*, 958 F.2d 738, 740-41 (6th Cir. 1992); *In re Murphy*, 282 F.3d 868, 870 (5th Cir. 2002); *Maas v. Northstar Educ. Fin., Inc.* (*In re Maas*), 497 B.R. 863, 869-70 (Bankr. W.D. Mich. 2013)(citing *Busson-Sokolik v. Milwaukee Sch. of Eng'g* (*In re Sokolik*), 635 F.3d 261, 266 (7th Cir. 2011)) *aff'd*, 514 B.R. 866 (W.D. Mich. 2014).

### B. "Made, insured, or guaranteed by a governmental unit" or "made under any program funded in whole or in part by a governmental unit or nonprofit institution."

Subsection 523(a)(8)(A)(i) applies to loans where a "governmental unit or a nonprofit institution had a defined role." *Crocker v. Navient Sols., L.L.C.* (*In re Crocker*), 941 F.3d 206, 217 (5th Cir. 2019). "The plain language suggests two limits—the adjective 'educational' and the

11

requirement that a governmental or nonprofit body make or guarantee the loan." *In re Murphy*, 282 F.3d 868, 870 (5th Cir. 2002).

In lieu of an affidavit, the Department submitted a Declaration of Rhonda Terry in accordance with 28 U.S.C. §1746.[7] The Declaration states that the educational loans were either "made by the Department" or "reinsured by the Department." [Adv. No. 20-03049, Doc. #20-1, pp. 4-5]. Additionally, the Master Promissory Notes for the Direct Loan Program make clear that the Direct Loans were made by the Department under Title IV, Part D of the Higher Education Act of 1965, as amended, 20 U.S.C. §1087a *et seq.* [*Id.*, pp. 9, 18].

The Declaration of Rhonda Terry avers that the FFELP Loans were reinsured by the Department under loan guaranty programs authorized under Title IV, Part B of the Higher Education Act of 1965, as amended, 20 U.S.C. §1071 *et seq.* [*Id.*, p. 3]. Additionally, according to the certificate of indebtedness, which was prepared by the Department and attached to the Declaration of Rhonda Terry as Exhibit A-1, the FFELP Loans were "reinsured by the Department under loan guaranty programs." [*Id.*, p. 4]. Latson did not file a response to the Department's motion setting forth specific facts to show that there would be a genuine issue for trial. *See,* Fed. R. Civ. P. 56(e).

1. The Direct Loans were "Made by a Governmental Unit."

The evidence shows that the Direct Loans were "made by" the Department. The Borrower's Rights and Responsibilities Statement attached to the Master Promissory Notes for the Direct Loans provide that the loans were "made by the [Department]." Latson also promised "to pay to [Department]" all loan amounts disbursed. [Adv. No. 20-03049, Doc. #20-1, pp. 9, 18]. "An educational loan 'made by' a governmental unit within the meaning of Section 523(a)(8) is one in which a governmental unit is the lender and the holder of the loan obligation." *Corletta v. Tex. Higher Educ. Coordinating Bd.* (*In re Pappas*), 517 B.R. 708, 721 (Bankr. W.D. Tex. 2014)(quoting *Columbus Coll. v. Shore* (*In re Shore*), 707 F.2d 1337, 1339 (11th Cir. 1983)), *aff'd sub nom.*, 531 B.R. 647 (W.D. Tex. 2015). The Department is a "governmental unit." 11 U.S.C. §101(27). Here, Loans 1 through 11 were educational loans "made by" a "governmental unit." Thus, there is no genuine issue of material fact that Loans 1 through 11 satisfy the "made by" requirement under §523(a)(8)(A)(i).

---

7/ Unsworn declaration under penalty of perjury. [Adv. No. 20-03049, Doc. #20-1, p. 3].

2. The FFELP Loans were "insured, or guaranteed by a governmental unit" or "made under any program funded in whole or in part by a governmental unit or nonprofit institution."

Latson received Loans 12 through 18 under the FFELP, with the Department serving as the reinsurer of student loans guaranteed by participating agencies. *See, Murphy v. Pa. Higher Educ. Assistance Agency* (*In re Murphy*), 282 F.3d 868, 870-72 (5th Cir. 2002). The Master Promissory Note for these loans identifies Sallie Mae Education Trust as the lender, and further identifies United Student Aid Funds, Inc. as the "Guarantor, Program, or Lender Identification" in a box at the top right of the promissory note. "United Student Aid Funds, Inc. has been dissolved and merged into an entity called 'Ascendium Education Solutions, Inc.'" *Hoffmeister v. United Student Aid Funds, Inc.*, 818 F. App'x 802, 804 (10th Cir. 2020). Great Lakes Higher Education Corporation is now known as Ascendium. [Adv. No. 20-03049, Doc. #4].

The Department argues that the FFELP Loans are "reinsured" under "loan guaranty programs" and are thus "funded" by the federal government.[8] The Declaration of Rhonda Terry

---

8/ Several bankruptcy cases have acknowledged the relationship the Department has with various guaranty agencies. *See e.g.*, *Bukovics v. Navient* (*In re Bukovics*), 612 B.R. 174, 185 (Bankr. N.D. Ill. 2020)("Great Lakes Higher Education Guaranty Corporation, the-then assigned holder of Plaintiff's consolidated student loan, assigned the loan to Defendant, an agency which guarantees federally-backed student loans against default and is in turn reinsured by the United States of America."); *DiFrancesco v. United States Dep't of Educ.* (*In re DiFrancesco*), 607 B.R. 463, 465 n.2 (Bankr. M.D. Pa. 2019)("However, these loans were guaranteed by PHEAA and also reinsured by the United States Department of Education."); *Shenk v. United States Dep't of Educ.* (*In re Shenk*), 603 B.R. 671, 675 (Bankr. N.D.N.Y 2019)("The loan was guaranteed by the Academic Learning Center and reinsured by U.S. Dep't. of Ed."); *Grabis v. Navient Sols., LLC* (*In re Grabis*), 2018 WL 1508754 at *4, 2018 Bankr. LEXIS 888 at *14 (Bankr. S.D.N.Y Mar. 26, 2018)("These loans are insured by participating 'guaranty agencies' which, in turn, are reinsured by the Department of Education.")(citing *Calise Beauty Sch., Inc. v. Riley*, 941 F. Supp. 425, 427 (S.D.N.Y. 1996) and explaining regulations under FFELP); *Rosen v. AES/Chase Bank* (*In re Rosen*), 2016 Bankr. LEXIS 4711 at *6 n.2 (Bankr. N.D. Ill. Nov. 1, 2016)("Guaranty agencies, like ECMC, guarantee such loans against default and are in turn reinsured by the United States of America."); *DuBois v. Student Loan Mktg.* (*In re DuBois*), 2015 WL 9238960 at *3, 2015 Bankr. LEXIS 4400 at *10 (Bankr. D.S.D. Dec. 16, 2015)("The loan obligation was guaranteed by USA Funds, and then reinsured by the Department of Education under loan guaranty programs."); *Hangsleben v. United States Dep't of Educ.* (*In re Hangsleben*), 2011 WL 2413340 at *1, 2011 Bankr. LEXIS 2277 at *2 (Bankr. N.D. June 10, 2011)("Debtor's loan obligations were guaranteed by Minnesota Higher Education Assistance Foundation ('the guarantor') and reinsured by the United States Department of Education (DOE)."); *Corbett v. Sallie Mae Servicing Corp.* (*In re Corbett*), 2008 WL 5024975 at *1, 2008 Bankr. LEXIS 3988 at *3 (Bankr. D. Ariz. Aug. 26, 2008)("The funds lent under the FFELP Program are provided by banks and other lenders, guaranteed by state agencies and reinsured by the federal government."); *Educ. Credit Mgmt. Corp. v. Blackbird* (*In re Blackbird*), 2008 WL 8444793 at *2 n.7, 2008 Bankr. LEXIS 4666 at *7 n.7 (9th Cir. BAP July 11, 2008)("Guaranty agencies, such as ECMC, guarantee such loans against default or bankruptcy and are, in turn, reinsured by the United States Department of Education."); *Atamian v. United States Dep't of Educ.* (*In re Atamian*), 368 B.R. 375, 377 (Bankr. D. Del. 2007)("The USA Loans were guaranteed by USA FUNDS and reinsured by the DOE under a statutorily authorized guaranty program."); *In re Root*, 318 B.R. 851, 852 (Bankr. W.D. Mo. 2004)("The Motion is opposed by the United States Department of Education ('Department'), which now holds the Debtor's loans, having reinsured the guarantor of the original lender."); *Coman v. United States Dep't of Educ.* (*In re Coman*), 2003 WL 224106392 at *1, 2003 Bankr. LEXIS 1361 at *1 (Bankr. C.D. Ill. Oct. 23, 2003)("This obligation was guaranteed by the Illinois Student Assistance Commission ('ISAC') and then reinsured by the U.S. Department of Education ('Defendant') under loan guaranty

13

attests that the FFELP Loans were reinsured by the Department under loan guaranty programs authorized under Title IV, Part B of the Higher Education Act of 1965, as amended, 20 U.S.C. §1071 *et seq*. [Adv. No. 20-03049, Doc. #20-1, p. 3]. The guaranty agency appears to be Great Lakes Higher Education Corporation n/k/a Ascendium as successor to United Student Aid Funds, Inc. After Latson's default in July 2019, the original guarantee was triggered and the notes were assigned to Great Lakes Higher Education Corporation n/k/a Ascendium. [Adv. No. 20-03049, Doc. #4].

Although it is unclear when and how the Department became the holder of Loans 12 through 18 after they were assigned to Great Lakes Higher Education Corporation, there is no genuine issue regarding the fact that Loans 12 through 18 were insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution. The Declaration of Rhonda Terry asserts that the FFELP loans at issue were reinsured by the Department under loan guaranty programs authorized under Title IV-B of the Higher Education Act of 1965, as amended, 20 U.S.C. §1071 *et seq*. [Adv. No. 20-03049, Doc. #20-1, p. 3]. This governmental insurance, guarantee, and/or funding is also self-evident: at some point after Latson defaulted, the Department stepped in and assumed legal responsibility for the debt. *See, Siegel v. U.S.A. Grp. Guarantee Servs.* (*In re Siegel*), 282 B.R. 629, 632 (Bankr. N.D. Ohio 2002)(Speer, J.)(finding no genuine issue of material fact where guarantor assumed legal responsibility for government-guaranteed student loans). Furthermore, the executed promissory note for the FFELP Loans provided that the loan disbursements were subject to certain limitations specified in the Higher Education Act and applicable regulations issued by the Department of Education. *See, id.* Because the FFELP Loans were reinsured by the Department under loan guaranty programs, these loans were ultimately, in fact, guaranteed or "insured by the federal government, [or] made under a program funded in part by the federal government and in part by [United Student Aid Funds, Inc.], a private non-profit corporation." *Hoffman v. Educ. Credit Mgmt. Corp.* (*In re Hoffman*), 557 B.R. 177, 185 (Bankr. D. Colo. 2016). Thus, Loans 12 through

---

programs."); *Hollister v. Univ. of N.D.* (*In re Hollister*), 247 B.R. 485, 488 (Bankr. W.D. Okla. 2000)("Defendants' loans are guaranteed student loans under the FFELP, which are reinsured by the USDOE."); *Holland v. United States Dep't of Educ.* (*In re Holland*), 230 B.R. 387, 388 (Bankr. W.D. Mo. 1999)("[W]hile the loans in question were made under federal student loan programs and were federally reinsured or financed through the Department of Education, they were held by and owed to other parties (i.e., Sallie Mae, the Missouri Coordinating Board for Higher Education, and USAF)."); *Karben v. ELSI, First Nat'l Bank* (*In re Karben*), 201 B.R. 681, 682 (Bankr. S.D.N.Y. 1996)("This loan was guaranteed by MHEAC and reinsured by the Federal Government under the provisions of the Federal Higher Education Act.").

14

18 were "insured or guaranteed" by a governmental unit or made under a program "funded" in whole or in part by a governmental unit or a nonprofit institution.

Latson's Complaint focuses on §523(a)(8)(B). However, as previously noted, a debt "need only fit within one of the three subdivisions to fall within the discharge exception of §523(a)(8), if the court finds that the loans in question fall within one of the subdivisions, it need not address whether the loans fall within the other subdivisions." *Monyak v. Navient Sols., LLC* (*In re Monyak*), 2021 WL 371753 at *3, 2021 Bankr. LEXIS 239 at *6 (Bankr. N.D. Ohio Feb. 2, 2021). Because this court finds Loans 1 through 18 nondischargeable under §523(a)(8)(A)(i), the same issues do not need to be addressed under (a)(8)(B).

The Department specifically asserts that Loans 12 through 18 made under the FFELP are excepted from discharge. [Adv. No. 20-03049, Doc. #20]. Loans 19 and 20 appear to have also been made under this program. [Adv. No. 20-03049, Doc. #20-1, Ex. A-6]. However, the Department has not included these loan amounts in its motion or provided a copy of the master promissory note for these loans.[9] [Adv. No. 20-03049, Doc. #20, p. 10]. At this point, it is unclear if the Department has assumed legal responsibility for Loans 19 and 20.[10] *See, Siegel v. U.S.A. Grp. Guarantee Servs.* (*In re Siegel*), 282 B.R. 629, 632 (Bankr. N.D. Ohio 2002).

## CONCLUSION

The evidence establishes, and the court finds, that Loans 1 through 18 are educational loans that fall within the parameters of 11 U.S.C. §523(a)(8).

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment be, and hereby is, **GRANTED,** and Loans 1 through 18 are held to be nondischargeable.

It is **FURTHER ORDERED** that this matter is set for further pre-trial as how to proceed

---

9/ It appears Great Lakes Higher Education Corporation n/k/a Ascendium is the current guarantor for Loans 19 and 20. [Adv. No. 20-03049, Doc. #20-1, p. 29]. Ascendium, however, is proceeding *pro se* and has not filed an Answer or any response. *See, Parvizi v. United States Dep't of Educ.* (*In re Parvizi*), 2021 WL 1921121 at *1 n.2, 2021 Bankr. LEXIS 1283 at *1 n.2 (Bankr. D. Mass. May 13, 2021)(the bankruptcy court in *Parvizi* issued an order to show cause to determine whether the guaranty agency should be dismissed from the adversary proceeding since it appeared the guaranty agency was not a proper party after the debtor stipulated that the guaranty agency sold the promissory notes to the Department).

10/ *See e.g., Grabis v. Navient Sols., LLC* (*In re Grabis*), 2018 WL 1508754 at *5, 2018 Bankr. LEXIS 888 at **15-17 (Bankr. S.D.N.Y. Mar. 26, 2018)(collecting cases dismissing the Department where it is not a creditor of the debtor because the Department did not own the loans at issue and had no real interest to defend); *Dorsey v. United States Dep't of Educ.* (*In re Dorsey*), 2015 WL 7272673 at *3 n. 35, 2015 Bankr. LEXIS 3917 at **8-9 n.35 (Bankr. E.D. La. Nov. 17, 2015)(same).

with Loans 19 and 20.